GREGORY GALBERTH,

$\qquad$ Plaintiff,

v.

$\qquad$ 9:14-CV-115
$\qquad$ (BKS/ATB)

C. DURKIN, et al,

$\qquad$ Defendants.

GREGORY GALBERTH, Plaintiff pro se
DENISE P. BUCKLEY, Ass't Att'y Gen. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## ORDER and REPORT-RECOMMENDATION

Currently before this court is defendants' motion for partial summary judgment, seeking dismissal of three of plaintiff's four surviving claims in plaintiff's civil rights complaint. (Dkt. No. 69). Plaintiff filed a response in opposition to the motion. (Dkt. No. 71). Defendants filed a reply, and plaintiff filed two sur-replies. (Dkt. Nos. 72, 74, 75). The motion has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Brenda K. Sannes, United States District Judge. For the reasons stated below, this court recommends that defendants' motion for partial summary judgment motion be denied.

As part of his first-sur-reply, plaintiff listed a history of alleged abusive behavior by DOCCS employees at various facilities, and questioned whether these claims, including actions which are already pending and those that plaintiff has not yet

filed, should be combined with this proceeding.  (Dkt. No. 74, at 7-11[1]).  To the extent that plaintiff's filing can be interpreted as a motion for leave to amend his complaint pursuant to F.R.C.P. 15 or to consolidate proceedings pursuant to F.R.C.P. 42, both requests are denied.[2]

## I.  PROCEDURAL HISTORY

On February 3, 2014, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that eight employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his constitutional rights in four separate excessive force incidents during his confinement at the Clinton Correctional Facility ("Clinton").  (Compl., Dkt. No. 1).  By Decision and Order dated April 23, 2014, Senior Judge Lawrence E. Kahn dismissed, *sua sponte*, all claims against defendants in their official capacity, based on Eleventh Amendment immunity.  (Dkt. No. 15 at 3-4).

On July 1, 2014, the New York State Attorney General's Office filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of plaintiff's complaint in its entirety.  (Dkt. No. 30).  While the motion to dismiss was pending, the case was reassigned to Judge Brenda K. Sannes.  (Dkt. No. 40).  Judge Sannes, adopting my

---

[1] All page numbers cited herein are those assigned by the court's electronic case filing system ("CM/ECF").

[2] The CM/ECF docket lists two other civil rights proceedings filed by plaintiff in the Northern District of New York.  Plaintiff has appealed a February 28, 2014 jury verdict in favor of defendants in *Galberth v. Hayes*, No. 9:11-CV-1083 (DEP)   His other proceeding, *Galberth v. Bielwiez*, No. 9:15-CV-1443 (TJM/TWD) is currently in discovery.

December 8, 2014 Report-Recommendation (Dkt. No. 39), dismissed plaintiff's Fourteenth Amendment claims, but otherwise denied defendants' motion to dismiss. (Dkt. No. 41).

Now, upon completion of discovery, the Attorney General's office has moved for summary judgment for failure to exhaust administrative remedies in relation to plaintiff's Eighth Amendment claims of excessive force during two separate incidents that occurred on May 15, 2011, and another incident that occurred on November 7, 2011. The parties agree that plaintiff exhausted his remedies with respect to his Eighth Amendment claim that certain defendants used excessive force on November 5, 2011.

## II.   FACTS

Plaintiff states that he suffers from mental illness and is regularly housed in a mental health observation cell, described in his complaint as an O.B.S. Mental Health Unit ("OBS"). (Compl. at 7). The relevant facts in this case were outlined in my December 8, 2014 Order and Report-Recommendation (Dkt. No. 39), and will be recited herein for continuity, with additional clarity drawn from the papers filed in connection with this motion, including the transcript of plaintiff's November 3, 2015 deposition. (Exhibit A to Buckley Decl., ("Dep."), Dkt. No. 69-4).

### A.   May 15 Incidents

Plaintiff alleges two separate incidents of excessive force that occurred on May 15, 2011, while plaintiff was housed in an OBS cell at Clinton. (Compl. at 8).

Plaintiff claims that the first incident occurred after he complained to defendant Plumbly about the quality and the amount of food that was served for breakfast that morning. (*Id.*) As plaintiff was trying to explain his problem with the food, defendant Plumbly became "hostile," slammed the "feed up hatch," and then called for "a sergeant and another officer." (*Id.* at 9).

Plaintiff alleges that as the other officers approached plaintiff's cell, defendant Plumbly opened the door of the cell and began to beat plaintiff in the rib cage and lower back. (*Id.*) Officer Plumbly then "body slammed" plaintiff onto the steel bed, got on top of him, and began to choke him, while saying: "I'm tired of your shit." (*Id.* at 9-10; Dep. at 36-47). Plaintiff claims that his hands were being held by four other officers who were also hitting plaintiff in his face, rib cage, back, and right leg. (Compl. at 10). Plaintiff recognized defendants Sears and Bisso during the incident, but was unable to identify the other involved officers. (Dep. at 52-53). Defendant Bisso was wearing a ring and hit plaintiff in the face and across the forehead with it, causing pain. (Compl. at 10; Dep. at 42) Plaintiff states that after the officers left his cell, two near-by inmates told plaintiff that they heard "everything," and that plaintiff should call them as witnesses "when the time comes." (Compl. at 11).

The second alleged incident occurred a few hours later.[3] Plaintiff alleges that he

_____

[3] In his complaint, plaintiff alleged that this second assault occurred on May 16, 2011, but testified at his deposition that the assault in the interview room actually occurred around noon on May 15, 2011. (Dep. at 77). Plaintiff testified that he had reported the assaults to a nurse on May 16, 2011, and was confused about the dates when preparing his complaint. (Dep. at 16).

was told by defendant Bisso that he would be taken to the Clinton facility clinic. (Compl. at 12; Dep. at 66-67). During the escort, defendant Bisso allegedly threatened plaintiff, telling him that "they break bones" and that plaintiff was lucky that "[he] didn't get [his] bones broke." (Compl. at 13; Dep. at 67). Defendant Bisso then allegedly gave orders to defendant Sears and "an unknown officer" to bring plaintiff to an "Interview Room," where defendant Bisso, Sears, and the unknown officer beat plaintiff again by pushing his face into the wall and hitting him in the rib cage. (Compl. at 12; Dep. at 70). Defendant Bisso allegedly told the other officers not to hit plaintiff in the face because they would be taking pictures in the clinic. (Compl. at 12).

Plaintiff was then escorted to the clinic, where he reported his injuries, but was afraid to tell the nurse what caused them because defendants Bisso and Sears were in the examining room, and plaintiff feared that they would follow through on defendant Bisso's earlier threat to "break bones." (Compl. at 13). Plaintiff instead told the nurse that he had fallen out of bed. (Dep. at 75).

Plaintiff alleges that on May 16th, he reported the previous day's incidents to the "medication nurse" who came to his cell. (Dep. at 57). He "basically told her I was beaten up by officers, and she just took it from there." (*Id.*). Plaintiff believes that the nurse reported the assaults to the lieutenant who was watch commander for that area. (*Id.*). At his deposition, plaintiff testified that he was still in pain about a week or two later. At that time he told a male nurse, whom he identified as "Nurse Ericson," that

he had been "beaten up by officers . . . ." (Dep. at 54, 75).

## B.    November 5, 2011 Incident

During a prison escort on or about November 5, 2011, plaintiff admitted to the correctional officers that he had inserted a tube of cream in his rectum. (Compl. at 14; Dep. at 87). He was taken to a "dry cell," so that he could be searched for contraband. (Dep. at 86). Plaintiff stated that he was also having thoughts of hurting himself at the time. (Compl. at 14; Dep. at 89). Plaintiff stated that he recognized defendant Bisso, who was standing outside the dry cell, "and became fearful" that he would be assaulted again. (Compl. at 14; Dep. at 87). A nurse came to take plaintiff's vital signs, and plaintiff grabbed a thermometer from her. (Compl. at 14; Dep. at 89). He then tried to swallow it in an attempt to hurt himself.[4] (*Id.*). When this attempt was unsuccessful, plaintiff then started to stab himself in the left arm with the same thermometer, drawing blood. (Compl. at 14-15; Dep. at 91). Plaintiff stated that defendants Russell and Barnes, both correctional officers, opened the cell door, took the thermometer away from plaintiff and handcuffed him. (Compl. at 15; Dep. at 92).

However, plaintiff claims that, as defendant Russell was applying the handcuffs, he "started bending [plaintiff's] ankles in a [breaking] position causing pain."

---

[4] The date of the incident is unclear because plaintiff states that he was in OBS on November 5, 2011, but that the mental health nurse came to take plaintiff's vital signs "[o]n that same day or the next day Nov 5, 2011." (Compl. at 14). If he was in OBS on November 5, "the next day" would have been November 6. All of the incident reports provided as part of this motion indicate that the date was November 5, 2011. (Dkt. No. 67-7, at 1- 34). However, this discrepancy is irrelevant for purposes of this motion.

Defendant Barnes then bent plaintiff's legs toward his back, also in a "breaking" position, during which plaintiff screamed in pain and begged the officers to stop hurting him. (*Id.*) Plaintiff claims that at least one near-by inmate could see what was happening.

Plaintiff claims that defendant Bisso ordered an officer to take plaintiff from his cell, and when plaintiff complained that he could not walk, defendant Bisso said: "When they get through with you[,] you won't be able to walk . . . ." (Compl. at 16; Dep. at 101). Defendants Barnes and Tuller then "took control" of plaintiff and dragged him to the emergency room, where they met defendant Sergeant Durkin. Plaintiff alleges that he was then tortured with a hard object, which plaintiff believed was a steel handcuff. (Compl. at 16; Dep. at 102-106). In his complaint, plaintiff alleges that defendants Barnes and Tuller repeatedly drove this object into plaintiff's ankle, causing him "excruciating pain." (*Id.*) Plaintiff claims that defendant Durkin laughed and held smelling salts up to plaintiff's nose while they were torturing him so that he would not faint from the pain, while telling plaintiff that they could "do this all day." (Compl. at 17; Dep. at 103). Plaintiff claims that defendant Durkin "ordered" defendants Barnes and Tuller to "continuously drive the steel cuff into [plaintiff's] ankle as he screamed out in pain." (Compl. at 17).

Plaintiff claims that this torture "went on for some time," until defendant Durkin told the officers to force plaintiff to stand. (*Id.*) When plaintiff could not do so, one of the officers twisted both of plaintiff's wrists at the same time so that he

would stand and have his photograph taken. (Compl. at 18; Dep. at 106-107). Plaintiff states that by this time, he could barely breathe, and his lungs felt as if they were going to collapse. (Compl. at 18; Dep. at 108). At his deposition, plaintiff testified that seven or eight other officers were present in the emergency room, but that he could not identify them. (Dep. at 113-14).

### C.    November 7, 2011 Incident

Plaintiff states that on November 7, 2011, he was again housed in an OBS cell, where he had been placed after trying to hurt himself on November 5, 2011. (Compl. at 19; Dep. at 123). Plaintiff alleges that defendant Plumbly asked plaintiff to put his hands out of the feed up hatch, but plaintiff refused because he feared for his life and feared that defendant Plumbly would beat him again. (Compl. at 19; Dep. at 123-24). Defendant Plumbly became hostile and angry, slammed the hatch down, and went to get defendant Sears. (*Id.*)

Defendants Plumbly and Sears then entered plaintiff's cell and began to beat him in the head, slap him across the face, choke him, and hit him on the right side of his lower back. (Compl. at 20; Dep. at 124-25). Plaintiff claims that defendant Plumbly told plaintiff that he would beat him within an inch of his life, and that plaintiff could "tell who you want, my word is like Gold around here." (Compl. at 20). Plaintiff claims that defendant Plumbly also called plaintiff a vulgar name. (*Id.*). Plaintiff estimated that the entire incident lasted about twenty minutes. (Dep. at 125).

## III.  **SUMMARY JUDGMENT**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## IV.  EXHAUSTION

### A.  Applicable Law

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

To the extent a civil rights claims must be exhausted by the grievance process,[5] completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Rep't-Rec.), *adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted before filing

---

[5] "Where an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted). *See also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Guillory v. Haywood*, No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015); *Rodriguez v. Rosner*, No. 12-CV-958 (TJM/ATB), 2012 WL 7160117, at *5 (N.D.N.Y. Dec. 5, 2012) (Rep't-Rec.), *adopted*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, at *11 (citing, *inter alia*, *Neal v. Goord*, 267 F.3d at 122)).

When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[6] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies

---

[6] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three part inquiry in recent cases. *See, e.g.*, *Richardson v. New York State Dep't of Corr. and Comm. Supervision Emp.*, __ F. App'x __, 2016 WL 690981, *1-2 (2d Cir. Feb. 22, 2016) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish that his failure to exhaust the grievance process was justified or excused); *Heyliger v. Gebler*, 624 F. App'x 780, 782-83 (2d Cir. 2015)*; Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).[7]

## B.  Analysis

### 1.  Untimely Grievance

In support of their exhaustion argument, defendants have submitted a

---

[7] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect.  In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the Second Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (Breyer, J. concurring) (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added).  This statement implies that there are still exceptions that a court may consider.

declaration from Christine Gregory, the supervisor of the Inmate Grievance Program ("IGP") at Clinton, who searched the facility grievance records, and did not find any grievances filed while plaintiff was at Clinton alleging (1) excessive force used by defendant Plumbly and others on May 15, 2011; (2) excessive force used by defendants Bisso, Sears and others on May 15, 2011 or May 16, 2011, or (3) excessive force used by defendants Plumbly and Sears on November 7, 2011. (Gregory Decl., Dkt. No. 69-6 at ¶ 12). Gregory included copies of the three grievances that plaintiff filed while housed at Clinton as exhibits to her declaration. (Dkt. No. 69-6 at ¶ 10-11; Dkt. Nos. 69-7, 69-8).

Defendants also submitted a declaration from Jeffrey Hale, the Assistant Director of the Inmate Grievance Program for DOCCS, and custodian of records maintained by CORC. (Dkt. No. 69-9). Hale searched CORC records, and his search did not identify any appeals of grievances related to (1) excessive force used by defendant Plumbly and others on May 15, 2011; (2) excessive force used by defendants Bisso, Sears and others on May 15, 2011 or May 16, 2011, or (3) excessive force used by defendants Plumbly and Sears on November 7, 2011. (Hale Decl., Dkt. No. 69-6 at ¶¶ 9-11 ).

Clinton and CORC records show that plaintiff did fully grieve the alleged November 5, 2011 use of excessive force by defendants Russell, Bisso, Barnes, Tuller, and Durkin, in a late grievance that was accepted and addressed on the merits. (Gregory Decl. ¶ 10; Hale Decl. ¶ 14). The Attorney General's office conceded that plaintiff exhausted his administrative remedies with regard to this incident, and

14

plaintiff's related claims are not part of the present motion.

In his response to this motion, plaintiff submitted proof that, after being transferred to Auburn, he had submitted a combined grievance dated December 20, 2011 that addressed both the May 15, 2011 incidents and the November 7, 2011 incident. (Dkt. No. 71, Ex. 2 to Pl.'s Br.). In a memorandum dated January 9, 2012, the Inmate Grievance Supervisor for Clinton rejected this grievance as untimely, as the twenty-one day deadline had expired for all three incidents. (Dkt. No. 72-1 at 21). Plaintiff appealed this determination in a June 18, 2012[8] grievance filed with the Auburn IGRC, arguing that three mitigating circumstances excused his late filing: his transfer between facilities to attend a court appearance; his poor mental health; and his fear of further physical harm from Clinton employees. (Dkt. No. 72-1 at 9-12). The IGRC again rejected plaintiff's grievance as untimely. (Dkt. No. 72-1 at 13). Plaintiff appealed this denial to the Superintendent on July 12, 2012. (*Id*.). The Superintendent denied the appeal on July 16, 2012, finding that the grievance was untimely. (Dkt. No. 72-1 at 14). Plaintiff appealed this denial to CORC, who unanimously rejected it as untimely. (Dkt. No. 72-1).

An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances. *Murray v. Palmer*, No. 9:03-CV-1010 (DNH/GLS), 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008); *Cole v. Miraflor*, No. 02 Civ. 9981 (RWS), 2006 WL 457817, at *5 (S.D.N.Y. Feb. 23, 2006);

---

[8] Plaintiff has not explained why he waited five months to appeal.

15

*see also Smith v. Kelly*, 985 F. Supp.2d 275, 290-91 (2013) (N.D.N.Y. 2013) ("It would eviscerate the exhaustion requirement to deem an inmate to have exhausted his available administrative remedies where he files a grievance four-and-a-half years late (while litigation is pending), then skips the superintendent and appeals the rejection of his grievance (based on untimeliness) to CORC, which never passes on the merits of his grievance. If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement: affording corrections officials the time and opportunity to quickly and economically correct its own mistakes internally, and producing a useful record for litigation, before allowing the initiation of a federal case."). Accordingly, although plaintiff belatedly pursued his grievance through the three-tiered process, his actions do not qualify as exhaustion of his administrative remedies.

### 2. *Hemphill* Analysis

As noted above, the continued viability of *Hemphill* is in question. In the absence of a definitive answer on this issue, this court will apply the traditional three part analysis to determine if plaintiff's failure to exhaust is excused or waived.

### a. Availability of Administrative Remedies

Defendants contend that the grievance process was readily available to plaintiff, as evidenced by the approximately thirty grievances that plaintiff has filed during his incarceration at various DOCCS facilities. (Dep. at 9-10; Ex. A. to Hale Decl., Dkt. No. 69-10). While it is clear that there was a well-established grievance process that plaintiff had utilized in the past, the inquiry under the *Hemphill* line of cases does not

end there.  The Second Circuit held that the test for deciding whether ordinary grievance procedures were "available" was an "objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill,* 380 F.3d at 688 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)).

Defendants do not directly contest plaintiff's factual allegation that defendant Bisso threatened to "break bones" if plaintiff told anyone about the officers' use of force, but note plaintiff's deposition testimony that, while housed at Clinton, he told two nurses, the Deputy Supervisor of Security, and the Inspector General that the defendants had beat him.[9]  (Dep. at 57, 75-79).   Defendants argue that plaintiff's actions are therefore inconsistent with an inmate who was prevented from utilizing the available grievance process due to a legitimate fear of retaliation.  (Def. Br. at 5-6, Dkt. No. 69-12).   While defendants' argument is not wholly unreasonable, the Second Circuit noted in *Hemphill* that "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Hemphill*, 380 F.3d at 688.[10]

_____

[9] Plaintiff testified that he made written complaints to the Deputy Supervisor of Security, "Mr. Brown," and the Inspector General. (Dep. at 77-78).  Neither party has submitted any documentation of these alleged complaints in connection with this motion.

[10] As discussed above, an inmate can only exhaust his administrative remedies through the formal grievance process.  Thus, plaintiff's complaints to the Inspector General and prison staff do not satisfy the exhaustion requirement.  *Dabney v. Pegano*, 604 F. App'x 1, 5 (2d Cir. 2015) (refusing to excuse an inmate's failure to exhaust notwithstanding an IG investigation of her claim).  In *Hemphill*, the Second Circuit merely held that such informal complaints did not

Consistent with this approach, district courts in this circuit have concluded that where an inmate plausibly alleges that his failure to file a grievance was due to threats of physical harm by defendant officers, there exists a material question of fact as to whether the defendant officers may rely upon the inmate's non-exhaustion as an affirmative defense. *Mandell v. Goord*, No. 9:06-CV-1478 (GTS/DEP), 2010 WL 811319, at *9 (N.D.N.Y. Sept. 29, 2009); *Morrison v. Hartman*, No. 07-CV-6633L, 2010 WL 811319, *3 (W.D.N.Y. Mar. 3, 2010); *Lunney v. Brureton*, No. 04 CIV 2438, 2007 WL 1544629, at *9 (S.D.N.Y. May 29, 2007) (collecting cases). Such claims have been considered more plausible when, as in this case, the inmate filed an untimely grievance, upon being transferred to another facility, that expressed concerns about retribution or retaliation. *Mandell*, 2009 WL 3123029, at *10.

### b. Estoppel

While the defendants have preserved their defense of non-exhaustion in their answer to the plaintiff's amended complaint (Dkt. No. 42, ¶ 20), the same questions of fact exist as to whether one or more of the defendants should be estopped from relying on this defense due to the threats allegedly made by defendant Bisso. *See Hemphill*, 380 F. 3d at 689 ("depending on the facts pertaining to each defendant, it is possible that some defendants may be estopped, while others may not be.")

### c. Special Circumstances

Beyond the allegations regarding defendant Bisso's threats, plaintiff has not

---

bar an inmate from demonstrating that his failure to exhaust was excused for other reasons.

alleged any other special circumstances that would excuse his failure to exhaust.
Plaintiff notes that he suffers from various mental health issues, and has undergone
psychiatric treatment while incarcerated, including therapy, medication, and repeated
confinement in OBS cells. (Dep. at 12-15, 123, 137). However, plaintiff has not
alleged any facts that would show that plaintiff's mental condition made him unable to
comply with the grievance process. *See Johnson v. New York City Dep't of Correct.*,
No. 13 Civ. 6799, 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) (granting a
motion to dismiss for failure to exhaust, where schizophrenic inmate did not allege
that his mental illness interfered with his ability to file a grievance ) (quoting *Bennett
v. James*, 737 F. Supp. 2d 219, 227-28 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 816 (2d
Cir. 2011)).

In addition, while plaintiff alleges "confusion" about the grievance process, the
only time that plaintiff expressed confusion in his papers was with regard to the
rejection of his grievance as untimely. Plaintiff's grievance history, and the content of
his appeals seeking consideration of his untimely grievance demonstrate an
understanding of the administrative grievance process. *See Newman v. Duncan*, No.
04-CV-395 (TJM/DRH), 2007 WL 2847304, *4 (N.D.N.Y. Sept. 26, 2007) (special
circumstances exception under *Hemphill* was intended to excuse an inmate's
"justifiable confusion" regarding proper DOCCS procedures). Plaintiff also briefly
argues that transfers between other DOCCS facilities impeded his ability to file a
timely grievance, but this contention is similarly unavailing. *Key*, 660 F. Supp.2d at
524 (transfer between state facilities did not excuse late grievance).

Accordingly, when drawing all inferences and resolving all ambiguities in plaintiff's favor for purposes of this motion for partial summary judgment, this court concludes that material questions of fact exist as to whether a similarly situated inmate of "reasonable firmness," having been beaten and threatened with physical harm if he told anyone, would have considered prison grievance procedures to be unavailable. Likewise, even if grievance procedures were available to plaintiff, there is a material question of fact whether such threats should estop one or more of the defendants from relying on the non-exhaustion defense. Because a rational finder of fact could conclude that plaintiff's failure to exhaust should be excused, summary judgment on this issue would be inappropriate, in light of the governing caselaw.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' partial summary judgment motion (Dkt. No. 69) be **DISMISSED WITHOUT PREJUDICE TO RENEWAL**; and it is further

**ORDERED**, that plaintiff's request to amend his complaint and/or consolidate proceedings (Dkt. No. 74) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**Dated:**     April 21, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge