UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**GREGORY GALBERTH,**

                      **Plaintiff,**

v.

                                                              **9:14-CV-115 (BKS/ATB)**

**C. DURKIN,** *Sergeant, Clinton Correctional Facility, et al.,*

                      **Defendants.**
_____

**Appearances:**

**Gregory Galberth**
03-A-0661
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403
Plaintiff, pro se

**Denise P. Buckley, Esq.**
Hon. Eric T. Schneiderman
Office of New York State Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**Hon. Brenda K. Sannes, U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff pro se Gregory Galberth brought this action under 42 U.S.C. § 1983 alleging that defendants used excessive force against him, in four separate incidents at the Clinton Correctional Facility, in violation of the Eighth Amendment. Dkt. No. 1. On January 29, 2016, Defendants filed a motion for partial summary judgment, seeking dismissal of three of the

excessive force claims on the grounds that Plaintiff failed to exhaust his administrative remedies as to those claims. Dkt. No. 69. Plaintiff filed a response in opposition (Dkt. No. 71) and Defendants filed a reply (Dkt. No. 72). Plaintiff later filed two supplemental responses. Dkt. Nos. 74, 75. This matter was assigned to United States Magistrate Judge Andrew T. Baxter who, on April 21, 2016, issued an Order and Report-Recommendation recommending that defendants' motion be dismissed without prejudice to renewal. Dkt. No. 76, p. 20.[1] Magistrate Judge Baxter advised the parties that under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.*

Defendants have filed objections to the Report-Recommendation. Dkt. No. 77. Plaintiff has not filed objections or responded to Defendants' objections. For the reasons set forth below, the recommendation in the Report-Recommendation is adopted.

## II. Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

Summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014). A fact is material if it "might affect the outcome of the suit under the

---

[1] Magistrate Judge Baxter ordered that to the extent Plaintiff's filing constituted a motion for leave to amend his complaint under Fed. R. Civ. P. 15 or to consolidate proceedings under Fed. R. Civ. P. 42, it was denied. Dkt. No. 76, pp. 2, 20.

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a summary judgment motion, the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

### III. Discussion

#### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. *See Espinal v. Goord*, 558 F.3d 119, 123-24 (2d Cir. 2009). To properly exhaust his administrative remedies an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 US 81, 88 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). 7 N.Y.C.R.R. §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).

Recently, in *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857-58 (2016), the Supreme Court held that there is no "special circumstances" exception to the PLRA exhaustion

requirement.[2] While exhaustion under the PLRA is mandatory, the Court ruled that "the PLRA contains its own, textual exception . . . [because] the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Id.* at 1858 (quoting 42 U.S.C. § 1997e(a)). The Supreme Court identified three circumstances in which administrative remedies are unavailable. *Ross*, 136 S. Ct. 1859-60. One of these is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." *Id*. at 1860. The administrative process is unavailable, and the PLRA "poses no bar" when officials "threatened individual inmates so as to prevent their use of otherwise proper procedures." *Id.*

The Second Circuit has noted that *Ross* "largely supplants [the] *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Correction Officer Priatno*, __F.3d__, No. 14-4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016). The Second Circuit has held that the inquiry into whether a threat is sufficient to render the grievance procedure unavailable is an objective one, asking whether "a similarly situated individual ordinary firmness" would have deemed the procedures unavailable. *Hemphill*, 380 F.3d at 688. The Court recognized that "threats or intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance." *Id.*

**B. Analysis**

In this case two of the excessive force incidents occurred on May 15, 2001; the third excessive force incident at issue occurred on November 7, 2011, all while Plaintiff was incarcerated at the Clinton Correctional Facility. Dkt. No. 76, pp. 3-8. There is no dispute that

---

[2] The Second Circuit had recognized a "special circumstances" exception as well as an "estoppel" exception. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).

Plaintiff fully grieved an excessive force incident which occurred there on November 5, 2011. Dkt. No. 76, pp. 14-15.[3] In the Report-Recommendation, Magistrate Judge Baxter concluded that defendants' motion for summary judgment for failure to exhaust the three excessive force claims should be denied because there are material issues of fact "as to whether a similarly situated inmate of 'reasonable firmness,' having been beaten and threatened with physical harm if he told anyone, would have considered prison grievance procedures to be unavailable." Dkt. No. 76, p. 20.[4] Defendants have objected to that determination. Dkt. No. 77.

Specifically, Defendants argue that Magistrate Judge Baxter "appears to have overlooked" facts in concluding that there are material questions of fact. Dkt. No. 77, p. 2. Defendants argue that Magistrate Judge Baxter: (1) overlooked the fact that "Plaintiff did not testify at deposition that he was afraid to grieve the November 7, 2011 incident," but instead testified that "he fully grieved the incident" and then "materially altered" that testimony; and (2) overlooked "material submissions with respect to the plausibility of fear of retaliation as an excuse for" Plaintiff's failure to pursue administrative remedies. Dkt. No. 77, p. 2. Defendants also argue that this case is distinguishable from the case law cited in the Report-Recommendation. *Id.*

After carefully reviewing Defendants' objections and the record in this case the Court rejects Defendants' contention that there was any error in overlooking facts or submissions. Magistrate Judge Baxter did not, as Defendants argue, "overlook" the fact that Plaintiff filed a

---

[3] The facts in Magistrate Judge Baxter's Order and Report-Recommendation for which there is no objection are not clearly erroneous, and are adopted and incorporated here. Dkt. No. 76. The Court also incorporates herein the facts in Magistrate Judge Baxter's previously-adopted Report-Recommendation, Dkt. Nos. 39, 41.

[4] Magistrate Judge Baxter also concluded that "even if grievance procedures were available to plaintiff, there is a material question of fact whether such threats should estop one or more of the defendants from relying on the non-exhaustion defense," but in light of *Ross*, the Court has limited its consideration to whether administrative remedies were available. Dkt. No. 76, p. 14.

grievance regarding the November 5, 2011 incident while he was at the Clinton Correctional Facility. Dkt. No. 77, p. 3. The Report-Recommendation expressly cited to this grievance, and noted that the grievance is reflected in *Clinton* and CORC records. Dkt. No. 76, p. 14. The portion of the Report-Recommendation to which Defendants cite refers to the fact that Plaintiff later filed an untimely grievance regarding *the three other incidents*, upon being transferred to another facility. Dkt. No. 76, p. 18; see Dkt No. 76, p. 15.

The Court also rejects Defendants' claim that there was any error in connection with "overlooking" the Plaintiff's deposition testimony and the argument Plaintiff made in responding to the summary judgment motion. Defendants cite to Plaintiff's deposition testimony that he filed a grievance regarding the November 7, 2011 incident and appealed from the denial. Dkt. No. 77, p. 2. Defendants argue that this testimony is "flatly contradicted" by the DOCCS records and the declarations. Dkt. No. 77, p. 2. The DOCCS evidence was not overlooked by Magistrate Judge Baxter: the Report-Recommendation cites to those records and the declarations from individuals at the Clinton Correctional Facility and the Central Office Review Committee ("CORC") stating that they did not find records of a grievance of the November 7, 2011 incident. Dkt. No. 76, p. 14.

Defendants argues that Plaintiff "materially altered" his deposition testimony "by claiming" that he filed a combined (untimely) grievance of all three excessive force incidents. Dkt. No. 77, p. 2; *see* Dkt. No. 76, p. 15; Dkt. No. 71. Defendants contend that "[a]t no point in Plaintiff's opposition to Defendant's motion for partial summary judgment did Plaintiff claim that fear of retaliation played any role in his failure to file a timely grievance" regarding the November 7, 2011 incident. Dkt. No. 77, p. 3. However, when Defendants made this same argument in their reply memorandum, Plaintiff filed supplemental memoranda arguing that he

has not abandoned his fear of retaliation claim, and that he did not grieve the "the first and 3rd incident"[5] until after he had been moved to Auburn Correctional Facility because he feared for his life. Dkt. No. 74, pp. 3-4; *see* Dkt. No. 75, pp. 3-4.

After reviewing the record, the Court does not find any error in overlooking evidence or submissions. As Magistrate Judge Baxter has noted, Plaintiff's grievance of the November 5th incident is inconsistent with the alleged fear that prevented him from grieving the other incidents. Dkt. No. 39, p. 14. Plaintiff explains this inconsistency in his supplemental memoranda by stating "[t]his is the way he felt after the incidents took place." Dkt, No. 74, p. 3. As Magistrate Judge Baxter found, Plaintiff has alleged "more than a generalized fear of retaliation" in the verified complaint. Dkt. No. 39, p. 14. Plaintiff alleged that when he was beaten on May 16, 2011, by Officer Sears and Sergeant Bisson, Plaintiff was afraid to tell the nurse what "really happened" because Sergeant Bisso said "we break bones you better not tell on us." Dkt. No. 1, p. 13. Plaintiff alleged that during the beating by Officers Plumbly and Sears on November 7, 2011, Officer Plumbly said "I will beat you a Inch from life . . . And you tell who you want, my word is like gold around here." *Id.*, p. 20. In the next paragraph Plaintiff alleged that he "was unable to file Grievance for fear of his life." *Id.*, p. 20. Plaintiff further alleged that his "life has been threatened several times," and "prays that the court understands why he was unable to griev [sic] the first and third incidents." *Id.*, p. 21.

The Court has reviewed Defendants' argument regarding the factual differences in the district court cases cited by Magistrate Judge Baxter, Dkt. No. 77, pp. 3-4, and does not find that any error in the determination that under the facts of this case and the record now before the court, that there are material issues of fact as to whether a similarly situated inmate of reasonable

---

[5] The November 7th incident is referred to as "the third incident" in the complaint. Dkt. No. 1, pp. 19-21.

firmness would have considered prison grievance procedures to be unavailable for the excessive force incidents at issue.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 76) with respect to the availability of administrative remedies is **ADOPTED**; and it is further

**ORDERED** that defendant's summary judgment motion (Dkt. No. 69) is **DISMISSED** without prejudice to renewal; and it is further

**ORDERED** that the dispositive motion filing deadline is extended to August 15, 2016; and it is further

**ORDERED** that the Clerk of Court shall provide Plaintiff with copies of the unpublished decisions cited in this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated: July 14, 2016

Brenda K. Sannes
U.S. District Judge

2016 WL 3729383
United States Court of Appeals,
Second Circuit.

Mark Williams, Plaintiff–Appellant,
v.
Correction Officer Priatno, Correction Officer Gammone, Defendants–Appellees,
Correction Officer John DOE, State of New York, New York State Department of Corrections and Community Service, Defendants.[*]

[*] The Clerk of Court is directed to amend the caption to conform to the listing above.

Docket No. 14-4777
|
August Term, 2015
|
Argued: February 29, 2016
|
Decided: July 12, 2016

Plaintiff–Appellant Mark Williams appeals from an order of the District Court for the Southern District of New York that dismissed his claim under [42 U.S.C. § 1983](…) and the Eighth Amendment for failure to exhaust all available administrative remedies as required by the Prison Litigation Reform Act, [42 U.S.C. § 1997e(a)](…). We conclude that administrative remedies beyond the submission of his initial complaint were unavailable to Williams because the applicable grievance procedures are "so opaque" and confusing that they were, "practically speaking, incapable of use." [Ross v. Blake, 136 S. Ct. 1850, 1859 (2016)](…). Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**Attorneys and Law Firms**

[BRIAN M. FELDMAN](…) ([Michael J. Rooney](…), on the brief), Harter Secrest & Emery LLP, Rochester, NY, for Plaintiff–Appellant.

HOLLY A. THOMAS ([Barbara D. Underwood](…) and Anisha S. Dasgupta, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, for Defendants–Appellees.

Before: [KATZMANN](…), Chief Judge, [SACK](…) and [LOHIER](…), Circuit Judges.

**Opinion**

[KATZMANN](…), Chief Judge:

**\*1** Plaintiff–Appellant Mark Williams alleges in this [42 U.S.C. § 1983](…) case that Defendants–Appellees Correction Officer Priatno and Correction Officer Gammone violated his Eighth Amendment rights when they brutally beat him for talking back to another officer when he was an inmate at Downstate Correctional Facility ("Downstate") in New York. We are presented with the threshold question of whether Williams exhausted all available administrative remedies prior to filing this lawsuit in the United States District Court for the Southern District of New York, as required by the Prison Litigation Reform Act ("PLRA"), [42 U.S.C. § 1997e(a)](…). More specifically, we must decide whether the prison's grievance process was actually "available" to Williams in light of the extraordinary circumstances of his case. We conclude that that process was not available to Williams because the applicable grievance procedures are "so opaque" and confusing that they were, "practically speaking, incapable of use." [Ross v. Blake, 136 S. Ct. 1850, 1859 (2016)](…). We reverse the decision of the district court that granted defendants' motion to dismiss and remand for further proceedings consistent with this opinion.

### I. BACKGROUND

*A. Department of Corrections and Community Supervision Grievance Procedures*

The New York State Department of Corrections and Community Supervision ("DOCCS") regulations outline the procedures that apply to the Inmate Grievance Program ("IGP") at Downstate. The grievance process begins with the filing of a complaint within 21 days of an alleged incident. [N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1)](…). Typically, inmates file grievances with the grievance clerk. *Id.* However, if an inmate is housed in the special housing unit ("SHU"), and therefore segregated from the regular prison population, he may give the grievance complaint to a correction officer to file for him. *See id.* § 701.7. Upon filing, the grievance clerk numbers and logs the grievances. *Id.* § 701.5(a)(2).

Ordinarily, there are three levels of review of a grievance. The first is by the inmate grievance resolution committee ("IGRC"); the second is by the facility superintendent; and the third is by the central office review committee ("CORC"). *Id.* §§ 701.1(c), 701.5. However, "harassment grievances"—those that involve "employee misconduct meant to annoy, intimidate or harm an inmate," *id.* § 701.2(e)—are subject to expedited first–level review by the facility superintendent, *id.* § 701.8. When the grievance clerk identifies a harassment grievance, the clerk must forward the grievance to the superintendent on the same day that the grievance was filed. *Id.* § 701.8(b). If the grievance presents a bona fide harassment issue, then the superintendent must initiate an investigation, render a decision on the grievance, and inform the inmate of the decision within 25 days of receipt of the grievance. *Id.* § 701.8(d), (f). "If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC." *Id.* § 701.8(g); *see also id.* § 701.6(g)(2) (stating generally that matters not decided within designated time limits "may be appealed to the next step").

**\*2** If an inmate is transferred to another facility while a grievance is pending, a response to the grievance shall be mailed to the inmate at the new facility. *Id.* § 701.6(h)(1). "If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt." *Id.* § 701.6(h)(2). If an inmate wishes to file a new grievance about an incident that occurred prior to a transfer, he must file the grievance in the facility where he is currently housed, "even if it pertains to another facility." *Id.* § 701.5(a)(1).

*B. Facts and Procedural History*

Williams was formerly incarcerated at Downstate. He alleges that, on December 31, 2012, he was in a search room (also known as a "drafting" room) while his personal items were being searched. A correction officer was "thoroughly probing [his] legal work" and he asked her to stop. Joint App. at 32. Williams explains that the legal papers were related to a separate action seeking damages for an assault he experienced while an inmate at Rikers Island. The officer instructed Williams to sit down, which he did while "admonishing" her. *Id.* At that point, defendant correction officers Priatno and Gammone approached Williams. They grabbed Williams and dragged him to another room that had no cameras, where they were out of eyesight of the other 15 to 20 inmates who were seated in the drafting room. Williams alleges that the officers proceeded to assault him—thrusting his forehead against the wall, causing him to fall to the ground, and then kicking and stomping on any uncovered part of his body. Defendant Gammone allegedly picked him up and said, "this is what running your mouth gets you," and punched him on his right eye. *Id.* at 37. Williams fell to the floor again, and defendant Priatno allegedly kicked his face and head. Following the assault, the officers sent him to the infirmary. He suffered injuries to his head, knee, eye, elbow, lower back, jaw, and nose, and he now takes medication for anxiety and panic attacks.

Williams alleges that on January 15, 2013, while he was housed in the SHU at Downstate, he drafted a grievance detailing the officers' misconduct.[1] He gave the grievance to a correction officer to forward to the grievance office on his behalf, in accordance with DOCCS grievance procedures that apply to inmates in the SHU. *See* NYCRR tit. 7, § 701.7. One week later, Downstate superintendent Ada Perez was making rounds in the SHU. Williams told her about the incident and said he had not yet received a response to his grievance. Perez told him she had no knowledge of the grievance and that she would look into it. About a week after that conversation, Williams was transferred to another facility. He never received a response to the grievance and alleges that the correction officer in the SHU never filed it for him. There is no dispute that Williams never appealed the grievance.

[1] Some allegations concerning the circumstances of Williams's attempted filing of his grievance are taken from his pro se opposition to the motion to dismiss, which we may consider in resolving this appeal. *See Wright v. Comm'r of Internal Revenue*, 381 F.3d 41, 44 (2d Cir. 2004) (construing pro se submissions "liberally"); *Oritz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003) ("The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims.").

Proceeding pro se, Williams filed a complaint in the United States District Court for the Southern District of New York on January 13, 2014, asserting a claim under 42 U.S.C. § 1983 and the Eighth Amendment. The initial complaint named as defendants Correction Officer Priatno, Correction Officer John Doe, the State of New York, and DOCCS. Pursuant to screening procedures

that apply to pro se complaints under 28 U.S.C. § 1915A, the district court dismissed the claims against the State and DOCCS and directed the Attorney General's Office to ascertain the identity of defendant John Doe and provide that information to Williams. Williams filed an amended complaint on February 19, 2014, naming correction officers Priatno and Gammone as defendants.

**\*3** Defendants moved to dismiss the complaint on the basis that Williams failed to exhaust administrative remedies as required by the PLRA, citing records that show Williams never filed an appeal. In a decision dated December 10, 2014, the district court (Seibel, *J.*) granted defendants' motion. The court reasoned that, even if Williams's grievance had never been filed, he still could have appealed the grievance to the next level because the regulations allow an appeal in the absence of a response. The district court also *sua sponte* denied Williams leave to file a second amended complaint, concluding that "better pleading would not lead to a different result." Joint App. at 66.

Williams filed a timely notice of appeal and subsequently moved for appointment of pro bono counsel. In granting his motion, we directed pro bono counsel to brief, among other issues, the following questions:

> (1) whether the framework in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) for excusing non–compliance with exhaustion of administrative remedies is still good law in light of *Woodford v. Ngo*, 548 U.S. 81 (2006); and (2) if so, whether a prison's failure to respond to a grievance renders an administrative remedy "unavailable" so as to excuse the prisoner's non–compliance with administrative exhaustion.

Motion Order, filed Mar. 18, 2015, Docket No. 33. While this case was pending, the Supreme Court decided *Ross v. Blake*, 136 S. Ct. 1850 (2016), which clarified the framework under which courts should assess whether a prisoner has complied with the PLRA exhaustion requirement. Because that framework can be easily applied to the parties' arguments and the record on appeal, we review the district court's decision under *Ross* and conclude that the court erred in granting defendants' motion to dismiss. Accordingly, we reverse and remand for further proceedings.

## II. DISCUSSION

We review a grant of a motion to dismiss *de novo*. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Specifically, the issue of "[w]hether a plaintiff has exhausted administrative remedies under the [PLRA] is also a question reviewed *de novo*." *Amador v. Andrews*, 655 F.3d 89, 94–95 (2d Cir. 2011). For purposes of this review, we accept all of the factual allegations in the complaint as true, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and, because Williams appeared pro se before the district court, we are "constrained to conduct our examination with 'special solicitude,' interpreting the complaint to raise the 'strongest claims that it suggests,' " *Hill*, 657 F.3d at 122 (alterations omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)).

The PLRA instructs that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement. *See id.* at 215.

In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), we set forth a three–part inquiry to guide our analysis of whether a plaintiff has satisfied the PLRA. *See id.* at 686–91. The first part involves an assessment whether administrative remedies were in fact available to the plaintiff; the second part instructs courts to consider whether defendants forfeited the affirmative defense of exhaustion by failing to preserve it or should be estopped from raising it because their own actions inhibited the plaintiff's ability to exhaust administrative remedies; and the third part directs courts to determine whether special circumstances existed that justified a plaintiff's failure to exhaust remedies that were available and not subject

 *4 Two years later, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court weighed in on the importance of the PLRA exhaustion requirement without directly opining on the validity of the exceptions we outlined in *Hemphill*. In *Woodford*, a prisoner's grievance was denied because it was not timely filed. *Id.* at 86–87. He then filed a lawsuit in federal court and argued he should be relieved from the PLRA exhaustion requirement on the basis that, as a result of his untimely filing, the grievance process was no longer available to him. *Id.* The Court rejected this position, emphasizing that the PLRA "requires proper exhaustion," *id.* at 93, "which 'means using all steps that the [prison grievance system] holds out, and doing so *properly* (so that the [prison grievance system] addresses the issues on the merits)," *id.* at 90 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with [a prison grievance system's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

In the aftermath of *Woodford*, we were left to determine the extent to which our *Hemphill* framework remained intact. The text of the statute convinced the court that the first part of our inquiry—the determination of whether an administrative remedy was in fact "available" to the inmate—was still valid. *See, e.g.*, *Macias v. Zenk*, 495 F.3d 37, 44–45 (2d Cir. 2007) (discussing *Woodford* and analyzing whether the grievance process was actually available to the plaintiff); *Johnston v. Maha*, 460 F. App'x 11, 15 n.6 (2d Cir. 2012) (summary order) ("Although [*Woodford*] requires that prisoners 'properly' exhaust the available remedies under the PLRA, it certainly does not abrogate the unavailability defense to nonexhaustion."); *see also Woodford*, 548 U.S. at 85 (focusing its analysis on "all 'available' remedies"). However, the continued viability of *Hemphill*'s inquiries regarding estoppel and special circumstances was less clear. *See, e.g.*, *Amador*, 655 F.3d at 102; *Macias*, 495 F.3d at 43 n.1; *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

The Supreme Court's recent decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), squarely addresses that ambiguity and guides our decision here. In *Ross*, the Court held that, aside from the "significant" textual qualifier that "the remedies must indeed be 'available' to the prisoner," there are "no limits on an inmate's obligation to exhaust —irrespective of any 'special circumstances.' " *Id.* at 1856. The Court stressed "the mandatory nature of [the PLRA's] exhaustion regime," *id.* at 1857, noting that the text of the PLRA and its legislative history refute the existence of a special circumstances exception to the statute's exhaustion requirement, *id.* at 1857–58. Therefore, to the extent that our special circumstances exception established in *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004), and *Hemphill*, 380 F.3d at 689–91, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*. Indeed, *Ross* largely <mark>supplants</mark> our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *See Ross*, 136 S. Ct. at 1858–59.

Accordingly, we will shift our focus to an analysis of whether the PLRA's textual "unavailability" exception applies here. Our decision in *Hemphill* touches on that question, noting that "the behavior of the defendants may render administrative remedies unavailable." 380 F.3d at 686. But we are significantly aided by *Ross* in interpreting the meaning of the word "available" as used in the PLRA. In *Ross*, the Court highlights "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859.[2] First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[2] We note that the three circumstances discussed in *Ross* do not appear to be exhaustive, given the Court's focus on three kinds of circumstances that were "relevant" to the facts of that case. *Ross*, 136 S. Ct. at 1859. Because those circumstances are also relevant to the facts of this case, we do not opine on what other

circumstances might render an otherwise available administrative remedy actually incapable of use.

**\*5** Turning to the facts of this case, we assume for purposes of our analysis that an administrative remedy was "officially on the books." *Id.* at 1859. Prison regulations provide that inmates in the SHU may file grievances by giving the complaint to a correction officer to forward to the grievance clerk. *See* NYCRR tit. 7, § 701.7. The regulations also provide that an inmate may appeal a grievance "to the next step" if he does not receive a timely response. *Id.* § 701.6(g)(2); *see also id.* § 701.8(g). Defendants assert that, even if Williams's grievance had not been filed and despite the fact that he had been transferred to a new facility prior to receiving a response, he still could have attempted to appeal the grievance in accordance with sections 701.6(g)(2) and 701.8(g).

However, even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]." *Ross*, 136 S. Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

We accept as true Williams's allegation that the correction officer never filed his grievance.[3] *See Erickson*, 551 U.S. at 94. Under that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id.* § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC."). Accordingly, the regulations give no guidance whatsoever to an inmate whose grievance was never filed.

[3] We consider this claim to be plausible given Williams's allegations that he asked superintendent Perez about his grievance one week after giving it to the correction officer and Perez said that she had no knowledge of it. There is no question that Williams's grievance was a harassment grievance. *See* NYCRR tit. 7, § 701.2(e) (defining harassment grievances). Had the correction officer filed it, it should have been forwarded to Perez the same day in accordance with procedures that govern the processing of harassment grievances. *See* NYCRR tit. 7, § 701.8(b). At the motion to dismiss stage, the allegation that she had no knowledge of the grievance supports Williams's allegation that it was not filed.

Defendants assure us, however, that if Williams had attempted to appeal his grievance, it would have "allow[ed] the facility to alert the inmate that his original complaint ha[d] not been received, and to inform him about how to proceed with his complaint." Post–Argument Letter from Holly A. Thomas, Special Counsel to the Solicitor Gen., State of N.Y. Office of the Attorney Gen. ("Defendants' Post–Argument Letter") (Mar. 16, 2016), Docket No. 97, at 1. At oral argument, counsel for defendants stated that there is no time limit to appeal to the next step if an inmate does not receive a response to a grievance. *See* Oral Arg. Recording at 1:59:13–38. In their post–argument letter, defendants explain how this would work in practice by outlining three options that would be presented to an inmate following his appeal of an unfiled grievance: (1) if it is still within 21 days of the incident, the inmate can re–file the complaint; (2) if it is beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21–day time limit if he can show mitigating circumstances; or (3) if it is more than 45 days since the incident, the inmate may file a separate complaint grieving the denial of an extension to the time limit. Defendants' Post–Argument Letter, at 2–3; *see also id.*, App. 1b, 2c.[4]

[4] Defendants offer a fourth option for an inmate to address an unfiled grievance: submitting "a new complaint grieving the alleged willful mishandling of his original complaint by DOCCS's personnel." Defendants' Post–Argument Letter at 3. However, because such a grievance would not itself address the substantive allegations in the original unfiled grievance—and it is unclear how prevailing on the former would affect the ability to pursue the latter—under the circumstances of this case, it is at a minimum a roundabout, if not ineffectual, means for an inmate to attain relief.

**\*6** These options are pieced together from various provisions in the regulations that do not involve appeals

of grievances but provide instructions on the timelines that apply to the filing of new complaints. *See* NYCRR tit. 7, § 701.5(a)(1); *id.* § 701.6(g)(1)(i)(a); *id.* § 701.6(g)(1)(ii). A close review of the regulations shows, contrary to defendants' assertions at oral argument, that an "appeal" in Williams's circumstance is, indeed, subject to time limitations and procedural hurdles that in all but the rarest of circumstances would preclude him from pursuing his unfiled and unanswered grievance, and that are, in any event, "so confusing that ... no reasonable prisoner can use them." *Ross,* 136 S. Ct. at 1859 (quoting Tr. of Oral Arg. 23).

Looking at the first option, an inmate does not even have the right to appeal a grievance to the next step until the time for the superintendent to respond has already passed—a date which, in the case of a harassment grievance, is already well beyond 21 days of the incident. *See id.* §§ 701.5(a)(1), 701.8(g). Regarding the second option, for similar reasons, the window to request an extension between 21 and 45 days of the incident will occur only where the inmate took less than the allowed 21 days to submit his original complaint. If the inmate took full advantage of the time the regulations give him to act and then had to wait 25 days for a response, 46 days will have passed before he learns with certainty that the superintendent failed to respond.[5] Finally, where options one and two are unavailable, the third option is wholly inapplicable as a mechanism to appeal an unfiled grievance, because the regulations state unequivocally that "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." *Id.* § 701.6(g)(1)(i)(a). Therefore, even though option three suggests that an inmate could file a separate complaint grieving the denial of an exception to the filing deadline, such a grievance would be futile given that the regulations do not give the IGP supervisor authority to grant an exception beyond 45 days of the initial incident.

[5] Even when an inmate submits his initial grievance before the 21–day deadline specified in section 701.5(a)(1), and, therefore, it is possible that he could have filed a request for an extension under the second option, he would still not learn of that option until the prison responds to his "appeal" of the unanswered grievance and informs him of these options. In the examples provided by defendants, the amount of time the prison takes to provide a response to these types of inquiries varies. *See, e.g.,* Defendants' Post–Argument Letter, App. 1 (1 day); App. 2 (7 days); App. 3 (3 days); App. 4 (1 day); App. 5 (17 days).

In sum, the regulations plainly do not describe a mechanism for appealing a grievance that was never filed. Moreover, the purported options for relief provided by defendants, to the extent they are even available to an inmate in Williams's situation, only increase confusion regarding the avenues available to pursue an appeal. For these reasons, the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it.[6]

[6] Defendants argue that an inmate's claim that he submitted a grievance that was unfiled and unanswered (which the district court would accept as true at the motion to dismiss stage), and that was not appealed, cannot excuse compliance with the PLRA's exhaustion requirement. If the inmate's allegation to that effect alone sufficed for purposes of the PLRA, he could thereby "avoid the prison grievance process altogether ... without the administrative process ever having been initiated." Defendants' Br. at 22–23. Indeed, many district courts have concluded that a "nonresponse" to a grievance "must be appealed" in order to exhaust administrative remedies under the PLRA. *See, e.g., Smith v. Kelly,* 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013); *see also id.* at 281 n.8 (collecting cases). Nonetheless, defendants bear the initial burden of establishing the affirmative defense of non–exhaustion "by pointing to 'legally sufficient sources' such as statutes, regulations, or grievance procedures" which demonstrate that "a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't,* 788 F.3d 54, 59 (2d Cir. 2015) (alteration omitted) (quoting *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir. 2003)). Because, as we explained above, the process of appealing an unfiled grievance is practically unavailable to inmates under current DOCCS regulations, defendants have not met their initial burden here.

**\*7** Furthermore, if the regulations outlined above, as applied to a prisoner in Williams's situation, were not already "so confusing" that "no ordinary prisoner can discern or navigate [them]," *Ross,* 136 S. Ct. at 1859, their obscurity was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer. Defendants contend that a transfer does not affect an inmate's ability to appeal his grievance to the next step,

pointing to a provision in the regulation that provides: "If the [transferred] grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt." NYCRR tit. 7, § 701.6(h)(2). However, this provision presumes not only that the grievance was actually filed, but also that the inmate received an appeal form that he can sign and mail back. The regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response.

For the foregoing reasons, we conclude that the grievance procedures that were technically available to Williams are so opaque and confusing that they were, "practically speaking, incapable of use." Ross, 136 S. Ct. at 1859. Accordingly, in giving his grievance to the correction officer, Williams exhausted all administrative remedies that were available to him. 42 U.S.C. § 1997e(a). [7] To avoid confusion going forward, we recommend that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred.

[7] In light of this conclusion, we need not decide whether administrative remedies also may have been unavailable to Williams for other reasons, such as officer misconduct. See Ross, 136 S. Ct. at 1860.

### III. CONCLUSION

Having concluded that Williams satisfied the PLRA's exhaustion requirement, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this opinion.

**All Citations**

--- F.3d ----, 2016 WL 3729383

---