# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

GREGORY GALBERTH,

          Plaintiff,

 v.                      9:14-CV-115 (BKS/ATB)

C. DURKIN, et al,

          Defendants.

GREGORY GALBERTH, Plaintiff pro se
DENISE P. BUCKLEY, Ass't Att'y Gen. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## ORDER and REPORT-RECOMMENDATION

Currently before this court is defendants' second motion for summary judgment, seeking dismissal of plaintiff's civil rights complaint. (Dkt. No. 91, 92). Plaintiff filed a response in opposition to the motion,[1] and defendants filed a reply. (Dkt. Nos. 124, 125). The motion has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Brenda K. Sannes, United States District Judge. For the reasons stated below, this court recommends that defendants' motion for summary judgment be granted in part and denied in part.

---

[1] Plaintiff also filed correspondence with his response indicating that he needed "a few more days" to provide additional, unidentified exhibits in opposition to defendants' motion. (Dkt. No. 123). To the extent that plaintiff is seeking an additional extension of time to supplement his response, that request is denied. This court has already granted plaintiff numerous extensions in connection with this motion. (Dkt. No. 96, 98, 105, 112, 117, 120). Plaintiff's arguments are clear from his filed response, and this court concludes that additional exhibits will not alter the analysis of defendants' motion.

## I. PROCEDURAL HISTORY

On February 3, 2014, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that eight employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his constitutional rights in four separate excessive force incidents during his confinement at the Clinton Correctional Facility ("Clinton"). (Compl., Dkt. No. 1). By Decision and Order dated April 23, 2014, Senior Judge Lawrence E. Kahn dismissed, *sua sponte*, all claims against defendants in their official capacity, based on Eleventh Amendment immunity. (Dkt. No. 15 at 3-4).

On July 1, 2014, defendants filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of plaintiff's complaint in its entirety. (Dkt. No. 30). While the motion to dismiss was pending, the case was reassigned to Judge Brenda K. Sannes. (Dkt. No. 40). Judge Sannes, adopting my December 8, 2014 Report-Recommendation (Dkt. No. 39), dismissed plaintiff's Fourteenth Amendment claims, but otherwise denied defendants' motion to dismiss. (Dkt. No. 41).

On January 29, 2016, defendants moved for summary judgment on three of plaintiff's four claims, citing a failure to exhaust administrative remedies. (Dkt. No. 69). In light of plaintiff's contention that he feared for his safety if he had filed a grievance while housed at Clinton, and proof that plaintiff had filed untimely administrative grievances about the incidents shortly after he was transferred to a different facility, this court recommended denial of defendants' motion on April 21,

2016, without prejudice to renewal on other grounds. (Dkt. No. 76). Judge Sannes adopted this recommendation on July 14, 2016. (Dkt. No. 79). On December 1, 2016, defendants filed a second summary judgment motion, discussed below. (Dkt. No. 91).

## II. FACTS

The relevant facts in this case were outlined in my December 8, 2014 Order and Report-Recommendation (Dkt. No. 39) and my April 21, 2016 Order and Report-Recommendation (Dkt. No. 76), and will be recited herein for continuity, with additional information drawn from the papers filed in connection with this motion.

### A. May 2011 Incidents

Plaintiff suffers from mental illness and is regularly housed in a mental health observation cell, described in his complaint as an O.B.S. Mental Health Unit ("OBS"). (Compl. at 7). Plaintiff alleges two separate incidents of excessive force that occurred on May 15, 2011, while plaintiff was housed in an OBS cell at Clinton. (Compl. at 8). Plaintiff claims that the first incident occurred after he complained to defendant Plumbly about the quality and the amount of food that was served for breakfast that morning. (*Id*.) As plaintiff was trying to explain his problem with the food, defendant Plumbly became "hostile," slammed the "feed up hatch," and then called for "a sergeant and another officer." (*Id.* at 9).

Plaintiff alleges that as the other officers approached plaintiff's cell, defendant Plumbly opened the door of the cell and began to beat plaintiff in the rib cage and lower back. (*Id.*) Officer Plumbly then "body slammed" plaintiff onto the steel bed,

3

got on top of him, and began to choke him, while saying: "I'm tired of your shit." (Compl. at 9-10; Dkt. No. 91-6, Buckley Decl., Exhibit A, Transcript of November 3, 2015 Deposition ("Dep.") at 36-47). Plaintiff claims that his hands were being held by four other officers who were also hitting plaintiff in his face, rib cage, back, and right leg. (Compl. at 10). Plaintiff recognized defendants Sears and Bisso during the incident, but was unable to identify the other involved officers. (Dep. at 52-53). Defendant Bisso was wearing a ring and hit plaintiff in the face and across the forehead with it, causing pain, and leaving "knots" on plaintiff's forehead. (Compl. at 10; Dep. at 42-43). Plaintiff states that after the officers left his cell, two near-by inmates told plaintiff that they heard "everything," and that plaintiff should call them as witnesses "when the time comes." (Compl. at 11). Plaintiff identified these witnesses during his deposition. (Dep. at 49).

The second alleged incident occurred a few hours later.[2] Plaintiff alleges that he was told by defendant Bisso that he would be taken to the Clinton facility clinic. (Compl. at 12; Dep. at 66-67). During the escort, defendant Bisso allegedly threatened plaintiff, telling him that "they break bones," and that plaintiff was lucky that "[he] didn't get [his] bones broke." (Compl. at 13; Dep. at 67). Defendant Bisso then allegedly gave orders to defendant Sears and "an unknown officer" to bring

---

[2] In his complaint, plaintiff alleged that this second assault occurred on May 16, 2011, but testified at his deposition that the assault in the interview room actually occurred around noon on May 15, 2011. (Dep. at 77). Plaintiff testified that he had reported the assaults to a nurse on May 16, 2011, and was confused about the dates when preparing his complaint. (Dep. at 16).

4

plaintiff to an "Interview Room," where defendant Bisso, Sears, and the unknown officer beat plaintiff again by pushing his face into the wall and hitting him in the rib cage. (Compl. at 12; Dep. at 70). Defendant Bisso allegedly told the other officers not to hit plaintiff in the face because they would be taking pictures in the clinic. (Compl. at 12).

Plaintiff was then escorted to the clinic, where he reported his injuries, but was afraid to tell the nurse what caused them because defendants Bisso and Sears were in the examining room, and plaintiff feared that they would follow through on defendant Bisso's earlier threat to "break bones." (Compl. at 13). Plaintiff instead told the nurse that he had fallen out of bed. (Dep. at 75).

Plaintiff alleges that on May 16, 2011, he reported the previous day's incidents to the "medication nurse" who came to his cell. (Dep. at 57). He "basically told her I was beaten up by officers, and she just took it from there." (*Id.*). Plaintiff believes that the nurse reported the assaults to the lieutenant who was watch commander for that area. (*Id.*). At his deposition, plaintiff testified that he was still in pain about a week or two later. At that time he told a male nurse, whom he identified as "Nurse Ericson," that he had been "beaten up by officers . . . ." (Dep. at 54, 75).

### B. November 5, 2011 Incident

During a prison escort on or about November 5, 2011, plaintiff admitted to the correctional officers that he had inserted a tube of cream in his rectum. (Compl. at 14; Dep. at 87). He was taken to a "dry cell," so that he could be searched for contraband.

5

(Dep. at 86). Plaintiff stated that he was also having thoughts of hurting himself at the time. (Compl. at 14; Dep. at 89). Plaintiff stated that he recognized defendant Bisso, who was standing outside the dry cell, "and became fearful" that he would be assaulted again. (Compl. at 14; Dep. at 87). A nurse came to take plaintiff's vital signs, and plaintiff grabbed a thermometer from her. (Compl. at 14; Dep. at 89). He then tried to swallow it in an attempt to hurt himself. (*Id.*). When this attempt was unsuccessful, plaintiff then started to stab himself in the left arm with the same thermometer, drawing blood. (Compl. at 14-15; Dep. at 91). Plaintiff stated that defendants Russell and Barnes, both correctional officers, opened the cell door, took the thermometer away from plaintiff and handcuffed him. (Compl. at 15; Dep. at 92). Defendant Hamelin assisted with the restraint of plaintiff. (Dkt. No. 91-27, Hamelin Decl., at ¶ 7-8). Plaintiff claims that defendant Russell bent his legs backward, and "started twisting my feet, hurting my ankles." (Dep. at 92).

Plaintiff claims that defendant Bisso then ordered an officer to take plaintiff from his cell, and when plaintiff complained that he could not walk, defendant Bisso said: "When they get through with you[,] you won't be able to walk . . . ." (Compl. at 16; Dep. at 101). Defendants Barnes and Tuller then "took control" of plaintiff and dragged him to the emergency room, where they met defendant Sergeant Durkin. Plaintiff alleges that he was then tortured with a hard object, which plaintiff believed was a steel handcuff. (Compl. at 16; Dep. at 102-106). In his complaint, plaintiff alleges that defendants Barnes and Tuller repeatedly drove this object into plaintiff's

ankle, causing him "excruciating pain." (*Id.*) Plaintiff claims that defendant Durkin laughed and held smelling salts up to plaintiff's nose while they were torturing him so that he would not faint from the pain, while telling plaintiff that they could "do this all day." (Compl. at 17; Dep. at 103). Plaintiff claims that defendant Durkin "ordered" defendants Barnes and Tuller to "continuously drive the steel cuff into [plaintiff's] ankle as he screamed out in pain." (Compl. at 17).

Plaintiff claims that this torture "went on for some time," until defendant Durkin told the officers to force plaintiff to stand. (*Id.*) When plaintiff could not do so, one of the officers twisted both of plaintiff's wrists at the same time so that he would stand and have his photograph taken. (Compl. at 18; Dep. at 106-107). Plaintiff states that by this time, he could barely breathe, and his lungs felt as if they were going to collapse. (Compl. at 18; Dep. at 108). At his deposition, plaintiff testified that seven or eight other officers were present in the emergency room, but that he could not identify them. (Dep. at 113-14).

### C. November 7, 2011 Incident

Plaintiff states that he was again housed in an OBS cell on November 7, 2011, due to his attempted self-harm on November 5, 2011. (Compl. at 19; Dep. at 123). Plaintiff alleges that defendant Plumbly asked plaintiff to put his hands out of the feed up hatch, but plaintiff refused because he feared for his life and feared that defendant Plumbly would beat him again. (Compl. at 19; Dep. at 123-24). Defendant Plumbly became hostile and angry, slammed the hatch down, and went to get defendant Sears.

(*Id.*)

Defendants Plumbly and Sears then entered plaintiff's cell and began to beat him in the head, slap him across the face, choke him, and hit him on the right side of his lower back. (Compl. at 20; Dep. at 124-25). Plaintiff claims that defendant Plumbly told plaintiff that he would beat him within an inch of his life, and that plaintiff could "tell who you want, my word is like Gold around here." (Compl. at 20). Plaintiff claims that defendant Plumbly also called plaintiff a vulgar name. (*Id.*). Plaintiff estimated that the entire incident lasted about twenty minutes. (Dep. at 125).

## III. <u>SUMMARY JUDGMENT</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the

8

moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## IV. <u>EXCESSIVE FORCE</u>

### A. **Legal Standards**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To sustain a claim of excessive force, a plaintiff must still establish the objective and subjective elements of an Eighth Amendment claim. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. The malicious use of force to cause harm constitutes a per se Eighth Amendment violation, regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's

9

prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The Supreme Court has recently re-emphasized that the "core judicial inquiry" is not whether a certain quantum of injury was sustained, but rather whether the force was applied in a good faith effort to restore discipline, or whether it was applied maliciously to cause harm, regardless of the seriousness of the injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). The extent of the injury may be considered as one factor in determining whether the use of force could plausibly have been thought "necessary" in a particular situation. *Wilkins*, 559 U.S. at 40. The extent of the injury may also give some indication of the amount of

force applied and may ultimately be considered in determining damages if appropriate. *Id.*

> **B.** **Application**
>
> **1.** **Objective/Subjective Elements of Excessive Force**
>
> **a.** **May 2011 Incidents**

Plaintiff alleges that he was violently assaulted by five correctional officers, including defendants Plumley, Bisso, and Sears for twenty to thirty minutes on or about May 15, 2011. Defendants deny entering plaintiff's cell on May 14 or May 15, 2011, let alone using force against him. (Dkt. No. 91-31, Plumley Decl. ¶ 8; Dkt. No. 91-33, Bisso Decl. ¶ 6;). Plaintiff also alleges that defendant Sears and defendant Bisso assaulted plaintiff a second time, during an escort on either May 15 or May 16, 2011. (Compl. at 12). Defendants Bisso stated in his declaration that he supervised an escort of plaintiff after he complained of the earlier assault, but that plaintiff was moved to and from his cell without incident. (Bisso Decl. ¶ 12). Defendant Sears also denied that any wrongdoing occurred during the escort. (Dkt. No. 91-19, ¶ 4-7).

In support of their motion for summary judgment, defendants rely on photographs of plaintiff dated May 16, 2011, which do not show any obvious injuries or bruising. (Dkt. No. 91-14, Fitzgerald Decl., Ex. B). Although the lack of injury is not fatal to an excessive force claim, the extent and nature of an injury, if any, "'is probative of the amount and type of force actually used . . . and that in turn is likely to reflect on the reasonableness of that force[.]'" *Cunningham v. McCluskey*, No. 05 Civ. 10169, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (quoting *Yang Feng Zhao*

11

*v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009)); *Washington v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (finding *de minimis* injury to be probative of *de minimis* force) (Rep't-Rec), *adopted,* 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011). However, the "core judicial inquiry" in an excessive force claim is not the extent of the injuries sustained, but instead whether the nature of the force applied was non-trivial. *See Wilkins,* 559 U.S. at 37. Even a *de minimis* use of physical force can violate the Eighth Amendment if it is "repugnant to the conscience of mankind."

When credited and liberally construed, plaintiff's allegations that he was punched and choked in response to a complaint about the quality of prison food, and then beaten during a prison escort to discourage him from reporting the earlier assault, could potentially provide sufficient objective evidence to satisfy the first prong of the excessive force test. Likewise, his version of the events, if taken as true, would likely satisfy the subjective prong of the constitutional analysis.

### b. November 5, 2011 Incident

In contrast, plaintiff's version of the November 5, 2011 documented use of force by defendants Russell, Barnes, Hamelin, Tuller, Sears, Bisso, and Durkin, fails to meet either the objective or subjective prongs of the excessive force analysis. Plaintiff testified that he grabbed a nurse's thermometer and attempted to harm himself with it. (Dep. at 89-91). Plaintiff alleges that defendants Russell and Barnes responded to the nurse's screams for assistance, and entered his cell. (Dep. at 91-92). The defendants grabbed his arms, took the thermometer from plaintiff, and placed plaintiff in restraints. (Dep. at 92-94). While restraining plaintiff, one of the officers bent one of

plaintiff's legs backwards, causing him pain. (Dep. at 94). During his deposition, plaintiff testified that the responding officers did not punch or strike him. (Dep. at 93). Defendants' description of this portion of the November 5, 2011 incident is very similar to plaintiff's version of events. (Bisso Decl. ¶ 18-22; Hamelin Decl. ¶¶ 7-8; Sears Decl. ¶ 9; Dkt. No. 91-21, Russell Decl. ¶ 6-9).

Plaintiff was escorted to the emergency room for medical evaluation. He claims that, once there, the escorting officers pinned him down on a bed, repeatedly applied smelling salts, and drove a "hard object" against his ankle. (Dep. at 102-106). Defendants deny any use of force during the escort or in the emergency room. (Dkt. No. 91-17, Tuller Decl. ¶ 6; Dkt. No. 91-23, Barnes Decl. ¶¶ 6-8; Dkt. No. 91-25, Durkin Decl. ¶¶ 5-6).

Some parts of plaintiff's detailed description of the November 5, 2011 use of force are inconsistent with a claim of excessive force. For example, plaintiff testified that one of the correctional officers placed a brown paper bag over plaintiff's mouth to help him breathe. (Dep. at 108). Plaintiff was also allowed to lie down after he complained of chest pain, and was transferred to an outside hospital for evaluation. (Dep. at 108-109).

Even when viewed in the light most favorable to the plaintiff, the amount of force applied in the November 5, 2011 incident was not disproportionate to the correctional officers' legitimate goal of restraining an inmate who was attempting to harm himself with an improvised weapon. In addition, the superficial injuries that resulted from this use of force were *de minimis*. Medical reports show that plaintiff

had a small one-half inch abrasion on the left side of his forehead; a red area, approximately two inches round on the lower left back; and a small one inch abrasion on the back of his right elbow. (Dkt. No. 91-15, Fitzgerald Decl., Ex. C). Plaintiff also alleges that he suffered a scar on his left ankle, but that injury is also de *minimis*.

Even when viewing plaintiff's allegations in the light most favorable to him, plaintiff has failed to state an Eighth Amendment claim in connection with the November 5, 2011 use of force. Therefore, this court recommends that defendants Russell, Barnes, Hamelin, Tuller, Sears, Bisso, and Durkin be granted summary judgment on this claim, and that plaintiff's claim related to the November 5, 2011 incident be dismissed.

### c. November 7, 2011 Incident

Plaintiff alleges that he was beaten in an OMH cell on November 7, 2011 when he refused an order by defendant Plumley to put his hands through the feed-up hatch in his cell door. (Dep. at 123-25). Plaintiff alleges that, upon his refusal to comply, defendants Plumley and Sears entered plaintiff's cell and punched, slapped, and choked him. (Dep. at 124-25). There is no record of this use of force, and plaintiff did not receive any medical treatment after the incident.

Similar to the May 2011 incidents, plaintiff has sufficiently described a use of force that, if proven, would likely violate the Eighth Amendment. Punching, slapping, and choking an inmate for failure to follow an order is unlikely to be considered a *de minimis* use of force or a good faith effort to restore discipline. Although defendants have denied that the November 7, 2011 incident ever took place, that question of fact

14

cannot be resolved on this motion for summary judgment.

### 2. Plaintiff's Credibility

The rule in determining whether to grant summary judgment is that credibility determinations, weighing evidence, and drawing inferences are functions for the jury, not the court. *Blake v. Race*, 487 F. Supp. 187, 202 (E.D.N.Y. 2007) (citing *Anderson v. Liberty Lobby*, 477 U.S. at 255). However, the Second Circuit has held that in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately rely on contrary evidence presented by the defendant(s) to conclude, at the summary judgment stage, that no reasonable jury would credit the plaintiff's testimony. *Jeffreys*, 426 F.3d at 554-55. Plaintiff's excessive force claims rely almost exclusively on his own testimony, and are either inconsistent with or unsupported by medical reports and DOCCs records. Defendants thus encourage the court to rely on the *Jeffreys* exception to dismiss the May 2011 and November 7, 2011 excessive force claims[3], citing factual inconsistencies between plaintiff's grievance, complaint, deposition testimony, and motion papers. Although defendants raise a valid argument due to the very limited evidence supporting plaintiff's contentions, this court cannot conclude that *no* rational jury could credit plaintiff's description of the alleged assaults by correctional officers.

Defendants have pointed out some inconsistent details in plaintiff's version of

---

[3] Defendants also raised the *Jeffreys* exception with regard to the November 5, 2011 claim. Because this court has already recommended dismissal of that claim, further analysis on this point is unnecessary.

15

events. For example, plaintiff gave conflicting or confused testimony as to whether the first assault occurred during or after breakfast on May 15, 2011, and was unsure whether defendant Plumley had retrieved plaintiff's breakfast tray prior to the alleged assault. (Dep. at 16, 21, 24). Plaintiff also vividly described "knots" on his forehead that resulted from punches thrown by defendant Bisso, who was allegedly wearing a ring. (Dep. at 21, 42-43). Later, plaintiff testified that there were no visible marks on his forehead after the assault. (Dep. at 55-56). Plaintiff has also been inconsistent about the timing of the second assault, claiming that it either occurred within a few hours of the first attack, or the following day. (Dep. at 16, 66- 67, 77). Defendants also note that plaintiff appeared to rely on his complaint throughout his deposition, in an apparent effort to correct or augment his testimony. (Dep. at 19, 37, 72, 101).

These inconsistencies do not rise to the level of the *Jeffreys* exception. In *Jeffreys*, the plaintiff could not identify any of the individuals who allegedly attacked him, and could not describe their ethnicities, physical features, facial hair, weight or clothing, casting doubt on the veracity of his allegations. *Jeffreys*, 426 F.3d at 552. Unlike *Jeffreys*, plaintiff in this case has been consistent in his identification of the the defendants, as well as other DOCCS staff present during the incidents. Moreover, in *Jeffreys,* the plaintiff's claim that he was thrown out a third-story window by police officers was vitiated by his three prior statements that he jumped. *Id.* at 552. Defendants rely on much less extreme examples in support of this motion.

By citing the numerous inconsistent statements made by plaintiff, some of which were offered under oath, defendants' counsel has aptly demonstrated that

plaintiff's surviving excessive force claims will turn on issues of credibility. However, although plaintiff's inconsistencies provide "ammunition for cross-examination," they do not provide a basis for this court to recommend dismissal of his excessive force claims as a matter of law. *See Latouche v. Tompkins*, Case No. 9:09-CV-308 (NAM/RFT), 2011 WL 1103045, at *6 (N.D.N.Y. Mar. 23, 2011) (quoting *Fischl v. Armitage*, 128 F.3d 50, 54 (2d Cir. 1997)). This court cannot conclude that no rational jury could find in favor of plaintiff, and therefore, summary judgment is not appropriate as to the May 2011 or November 7, 2011 claims. *See, e.g., Griffin v. Crippen*, 193 F.3d 89, 90-92 (2d Cir. 1999) (although plaintiff could offer only his own testimony and evidence of a bruised shin and a swollen left knee in support of his excessive force claim, dismissal was inappropriate because there were genuine issues of material fact concerning whether correction officers, whom plaintiff admittedly assaulted, maliciously used force against him after he was subdued and handcuffed); *Sims v. Artuz*, 103 Fed. App'x. 434, 437 (2d Cir. 2004) (plaintiff's allegations that he was kicked and punched while being removed from his cell after causing a disruption, corroborated in part by documented minor injuries[4] were sufficient to withstand a summary judgment motion); *Dallio v. Sanatamore*, 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied

---

[4] The Second Circuit reversed the grant of summary judgment, which was based, in part, on the district judge's conclusion that the plaintiff "would have suffered 'far greater injury than actually occurred' if his account [of the incident] were accurate." *Id.*

17

where plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by correction officers, notwithstanding the relatively minor injuries the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on plaintiff's claim that defendant correction officer hit inmate several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that plaintiff suffered only a minor bruise).

As set forth above, this court recommends that defendants' motion for summary be granted solely with regard to the November 5, 2011 use of force incident. This court also notes that defendants have previously unsuccessfully moved for summary judgment on exhaustion grounds on plaintiff's surviving claims related to the May 2011 and November 7, 2011 incidents. (Dkt. No. 69). This previous motion for summary judgment was denied due to outstanding questions of fact regarding exhaustion. (Dkt. No. 76, 79). Because this exhaustion dispute is unresolved, an exhaustion hearing will likely be required before any trial on the merits of plaintiff's surviving claims. *See Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011) (plaintiff is not entitled to a jury trial on disputed factual issues related to his exhaustion of administrative remedies).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for additional time to file supplemental exhibits (Dkt. No. 123) is **DENIED**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 91) be **GRANTED** only with respect to the excessive force claims as against defendants Russell, Barnes, Hamelin, Tuller, Sears, Bisso, and Durkin in connection with the November 5, 2011 use of force,[5] and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 91) be **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated:**     August 31, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[5] If this recommendation is adopted, defendants Russell, Barnes, Tuller, Hamelin, and Durkin would be dismissed from the action entirely, because this is the only claim against them. Defendants Plumley, Bisso, and Sears would be the only remaining defendants to this action.