UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY GALBERTH,

                                              Plaintiff,                    9:14-cv-00115 (BKS/ATB)

v.

B. PLUMBLY, et al.,

                                              Defendants.
_____

APPEARANCES:

*For Plaintiff:*
Martin E. Gilmore
Elan K. DiMaio
Perkins Coie LLP
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112

*For Defendants:*
Eric T. Schneiderman
Attorney General of the State of New York
Katie E. Valder
David A. Rosenberg
Gregory Rodriguez
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Gregory Galberth, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this civil rights action under 42 U.S.C. § 1983 alleging that DOCCS officers used excessive force against him in four separate incidents—twice in May 2011, once on November 5, 2011, and once on November 7, 2011—at

Clinton Correctional Facility (the "Clinton Facility") in violation of the Eighth Amendment. (*See generally* Dkt. No. 1). On January 29, 2016, Defendants filed a motion for partial summary judgment seeking dismissal of three of the four excessive force claims—relating to the two May 2011 incidents and the November 7, 2011 incident—on the basis that Plaintiff failed to exhaust his administrative remedies.[1] (Dkt. No. 69). On April 21, 2016, Magistrate Judge Andrew T. Baxter issued a report-recommendation recommending denial of the motion, reasoning that there was a genuine dispute of material fact as to "whether a similarly situated inmate of 'reasonable firmness,' having been beaten and threatened with physical harm if he told anyone, would have considered prison grievance procedures to be unavailable." (Dkt. No. 76, at 20). After reviewing Defendants' objections, the Court adopted the report-recommendation. (Dkt. No. 79, at 7–8).

The Court held an evidentiary hearing on December 19, 2017. For the reasons set forth below, the Court finds that Plaintiff failed to properly exhaust his administrative remedies in connection with his remaining excessive force claims, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Accordingly, Plaintiff's Complaint is dismissed with prejudice.

## II.     DISCUSSION

### A.     Exhaustion Standard

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

---

[1] The January 29, 2016 motion did not seek dismissal of the excessive force claim relating to the November 5, 2011 incident, as Defendants conceded that claim was timely grieved. (Dkt. No. 69, at 1 n.1). Subsequently, on December 1, 2016, Defendants moved for summary judgment seeking dismissal of the Complaint in its entirety on the merits. (Dkt. No. 91). On September 27, 2017, the Court adopted Magistrate Judge Andrew T. Baxter's report-recommendation that the motion for summary judgment be granted with respect to the excessive force claim against Defendants Russell, Barnes, Hamelin, Tuller, Sears, Bisso, and Durkin in connection with the November 5, 2011 use of force, and that the motion otherwise be denied. (Dkt. No. 134, *adopting* Dkt. No. 128). Accordingly, the Court dismissed the excessive force claim relating to the November 5, 2011 incident. (*Id.*).

2

U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007).

Failure to exhaust administrative remedies is an affirmative defense; accordingly, a defendant bears the burden of persuasion on whether a plaintiff failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Nelson v. Plumley*, No. 12-cv-422, 2015 WL 4326762, at *7, 2015 U.S. Dist. LEXIS 91905, at *20 (N.D.N.Y. July 14, 2015) ("As an affirmative defense, the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence." (citation omitted)). The defendant discharges its initial burden of production by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure.[2] *White v. Velie*, No. 16-1183, 2017 WL 4082706, at *2, 2017 U.S. Dist. LEXIS 17850, at *5 (2d Cir. Sept. 15, 2017) (summary order); *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) ("[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." (internal quotation marks omitted)). The burden of production then shifts to the plaintiff, who must show that "other factors rendered a nominally

---

[2] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The grievance procedure in New York is a three-tiered process. The prisoner must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59; *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("Under the PLRA, a prisoner need exhaust only 'available' administrative remedies.").

One of the circumstances in which an administrative remedy is deemed unavailable is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"—for example, when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures." *Ross*, 136 S. Ct. at 1859–60. To determine whether a threat is sufficient to render the grievance procedure unavailable, courts ask whether the threat would deter a similarly situated individual of ordinary firmness from pursuing a grievance. *See Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011); *Crichlow v. Fischer*, No. 17-cv-194, 2017 WL 6466556, at *33, 2017 U.S. Dist. LEXIS 144395, at *29–30 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted*, 2017 WL 6459512, 2017 U.S. Dist. LEXIS 206982 (N.D.N.Y. Dec. 18, 2017); *cf. Rodriguez v. County of Suffolk*, No. 13-cv-2070, 2014 WL 3531897, at *5, 2014 U.S. Dist. LEXIS 96844, at *14 (E.D.N.Y. June 30, 2014) (noting that, unlike "specific affirmative threats of retaliation," a "generalized fear" of retaliation is insufficient to render a grievance procedure unavailable), *report and recommendation adopted*, 2014 WL 3532529, 2014 U.S. Dist. LEXIS 96347 (July 14, 2014).

### B. Exhaustion Evidence

It is undisputed that a grievance procedure existed at the Clinton Facility at the time of the alleged May 2011 and November 7, 2011 incidents, and that Plaintiff failed to file timely grievances concerning these incidents. (*See* Dkt. No. 143, at 1–2; Dkt. No. 148, at 6). The parties, however, dispute whether a similarly situated individual of ordinary firmness would have been intimidated from pursuing timely grievances. Based on all the evidence presented at the

4

exhaustion hearing, the Court finds that the grievance procedure was not made "effectively unavailable" for an inmate in Plaintiff's position. *Snyder*, 428 F. App'x at 92. Accordingly, Plaintiff's remaining claims must be dismissed for failure to exhaust administrative remedies.

### 1.     May 2011 Incidents

Plaintiff testified that, on May 15, 2011, Defendants Bisso, Plumley, and Sears, along with a fourth unknown officer, beat him up in his cell and assaulted him again the next day in a "side room" while escorting Plaintiff to the clinic for injuries. According to Plaintiff's testimony, during the escort, Defendant Bisso told Plaintiff not to tell anyone about the beatings because "we break bones." Plaintiff understood these words to mean that he would be harmed if he told anyone or filed a grievance. Plaintiff further testified that, in the morning of May 16, 2011, he told the mental health nurse about the May 15, 2011 incident, who notified "a lieutenant or something like that," and that he also told the medical nurse who was on duty after the mental health nurse. Plaintiff also recalled disclosing the events to a third nurse, who he identified as "Nurse Ericson," a couple of weeks later, but stated that he asked Nurse Ericson not to tell anyone else. On cross-examination, Plaintiff acknowledged that he filed an unrelated grievance on June 5, 2011, explaining that he wanted to leave the "D block" at the Clinton Facility. (*See* Ex. D-14). He was transferred to another facility on June 7, 2011 and returned to the Clinton Facility on September 30, 2011. There is no dispute that, during the period he spent outside of the Clinton Facility, Plaintiff did not file any grievance about the May 2011 incidents.

Defendants directly contradicted Plaintiff's testimony concerning the alleged threats. Defendant Bisso testified that he had no interaction with Plaintiff on May 15, 2011, and he denied making any threats to Plaintiff. Defendant Plumley, who was the officer on duty on that day, testified that he did not enter Plaintiff's cell, assault Plaintiff, or otherwise threaten him. In an investigation memorandum dated May 16, 2011, Defendant Bisso wrote that Plaintiff reported

5

a staff assault to "clinician S. Lochran" during her morning rounds on May 16, 2011. (Ex. D-1). However, when Defendant Bisso interviewed him, Plaintiff stated that "nothing at all happened, I just wanted to talk to you and see if I could be moved to D-4 company." (*Id.*). The memorandum further indicates that Plaintiff was seen by "facility medical staff" and "no injuries were noted on the inmate injury report." (*Id.*). Defendant Bisso added that "[a]ll escorts were completed under my supervision and without incident." (*Id.*).

The Court has carefully considered all of the evidence presented at the hearing, including Defendants Bisso's and Plumley's testimonies, as well as Defendant Bisso's investigation memorandum, and Plaintiff's testimony. The Court finds that Plaintiff's own testimony undermines his contention that he was intimidated from pursuing timely grievances. Plaintiff disclosed the incidents to three separate medical staff members at the Clinton Facility shortly after they occurred, and one of the staff members, the mental health nurse, notified an officer at the facility. Since Plaintiff had no assurance that the staff members would keep quiet or that Defendants would not learn of his disclosures, his conduct is inconsistent with any alleged fear that Defendants would harm him for speaking about the incidents. Neither did Plaintiff report the incidents when he was moved out of the Clinton Facility in June 2011, even though Plaintiff testified that, while he was moved around frequently among facilities, he did not know where he would be sent next.[3] Taken together, these circumstances indicate not only that Plaintiff did not subjectively fear retaliation but also that an inmate of ordinary firmness in Plaintiff's position would not have been prevented from filing a timely grievance about the May 2011 incidents. *See Snyder*, 428 F. App'x at 91 ("[W]hile Snyder's subjective fear is thus not dispositive, it is

---

[3] As it turns out, Plaintiff was moved back to the Clinton Facility a few months later, on September 30, 2011. (*See* Ex. No. D-4, at 2).

6

nonetheless relevant that two hours after the assault, Snyder complained to Corrections Officer Funnye, who Snyder testified was friendly with Officer Whittier.").

### 2. November 7, 2011 Incident

Plaintiff testified that, on November 7, 2011, Defendant Plumley came to his cell and asked him to put his hands out to be handcuffed so that a nurse could take his vital signs. Plaintiff refused because he was "afraid that something would happen." According to Plaintiff's testimony, Defendant Plumley called Defendant Sears, and the two officers then entered the cell and started beating Plaintiff up. Per Plaintiff's testimony, Defendant Plumley told him that he would beat him "from an inch of life," and if Plaintiff told anyone, "no one will believe you because my word is like gold around here." Plaintiff understood this to mean that he should not tell anyone about the beating. In rebuttal, Defendant Plumley testified that he could not recall any incident or conversation involving Plaintiff on November 7, 2011, and that he never threatened Plaintiff to prevent him from filing a grievance.

Plaintiff could not recall if he mentioned the November 7, 2011 incident to the mental health clinicians at the Clinton Facility, but he reported the incident to the nurse who drew up the injury report at the downstate prison to which he was transferred two days later. Plaintiff also testified that he wrote a letter to Clinton Facility Deputy Superintendent Brown about the incident when he was back at the Clinton Facility. That letter, dated December 12, 2011, described the alleged beating and disclosed the identity of the alleged abusers. (*See* Ex. D-10). Plaintiff also wrote a letter, dated December 12, 2011, to Clinton Facility Superintendent LaValle, which stated that Plaintiff had been afraid to tell anyone about the assaults but then met Mr. Brown, who "seem[ed] like a very good man." (*See* Ex. D-9). Plaintiff testified that he "felt safe writing to this man," even though Defendants were still employed at the Clinton Facility

when he wrote those letters. Additionally, Plaintiff attempted to grieve the November 7, 2011 incident on December 20, 2011, while still at the Clinton Facility. (*See* Ex. D-12).

Even assuming that Defendant Plumley did in fact tell Plaintiff that no one would believe him if he spoke about the beating, it is far from clear that an inmate of ordinary firmness would construe these words to make out a threat. In any event, Plaintiff's conduct following the November 7, 2011 incident belies any purported fear of retaliation. Plaintiff did not file a grievance when he was transferred to the downstate facility shortly after the November 7, 2011 incident. Further, when he was back at the Clinton Facility, Plaintiff openly complained to two high-level officials and named his abusers. Plaintiff then attempted to grieve the incident while still an inmate at the Clinton Facility. Although the attempt was untimely, there is no evidence indicating that the circumstances had changed by December 20, 2011 such that Plaintiff was no longer afraid of retribution from Defendants. Instead, the evidence affirmatively suggests that Plaintiff was unafraid to employ the grievance procedure, as he timely grieved the alleged November 5, 2011 excessive force incident against some of the same Defendants. Plaintiff has not satisfactorily explained why he feared retaliation for grieving the November 7, 2011 incident but not the November 5, 2011 incident. Based on all the evidence presented at the hearing, the Court finds that an inmate of ordinary firmness in Plaintiff's position would not have been prevented from filing a timely grievance about the November 7, 2011 incident.

## III.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's excessive force claims relating to the May 2011 incidents and the November 7, 2011 incident are **DISMISSED** for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice** in its entirety.

**IT IS SO ORDERED.**

Dated: January 12, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

9